483 A.2d 519

COMMONWEALTH of Pennsylvania

v.

Gary Lee SLYMAN, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 27, 1981.

Filed Sept. 21, 1984.

Reargument Denied Nov. 27, 1984.

Petition for Allowance of Appeal Denied March 18, 1985.

416

420

Alan Ellis, Freedom, for appellant.

John L. Brown, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and SPAETH and HESTER, JJ.

CERCONE, President Judge:

This is a direct appeal from the judgment of sentence imposed on October 8, 1980 by the Honorable John N. Sawyer, President Judge of the Court of Common Pleas of Beaver County.

On December 21, 1979, appellant was arrested and charged in six informations with sundry violations of the Controlled Substance, Drug, Device and Cosmetic Act (hereinafter referred to as "the Act").[1] Following a trial by jury, appellant was convicted on May 7, 1980 of six counts of possession with intent to deliver and delivery of cocaine;[2] one count of possession with intent to deliver and delivery of LSD;[3] one count of conspiracy to deliver cocaine;[4] one count of possession of cocaine;[5] and one count of possession of marijuana.[6]

1. Act of April 14, 1972, P.L. 233; 35 P.S. §§ 780–101 to 780–144.
2. *Id.* at Section 13, as amended 35 P.S. § 780–113(a)(30) (1978).
3. *Id.*
4. The Crimes Code, Act of December 6, 1972, P.L. 1482 No. 334, Section 1; 18 Pa.C.S.A. § 903.
5. Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, Section 13, as amended, 35 P.S. § 780–113(a)(16) (1978).
6. *Id.*

Timely written post-verdict motions in arrest of judgment and for a new trial were filed and denied. Appellant was sentenced, *inter alia*, to undergo imprisonment in a state correctional facility for a period of not less than one and a half (1½) nor more than three (3) years. This period of internment was then to be followed by a consecutive term of probation of three (3) years. In addition, appellant was ordered to make restitution in the sum of Three Thousand Nine Hundred and Eighty-Five Dollars ($3,985), and pay a fine of Five Thousand Dollars ($5,000) together with the costs of his prosecution.

The facts and procedural history relevant to the instant appeal are as follows: Dale W. Kenst, Jr., a paid informant for the Commonwealth, met with appellant on October 26, 1979 at Larry's Speed Shop, appellant's place of business, for the purpose of consummating an illicit sale of drugs. Acting on behalf of Agent Charles A. Gahagan of the Pennsylvania Department of Justice, Kenst purchased approximately one gram of cocaine from appellant. Later that same day, appellant sold to Kenst an additional one-half ounce of cocaine for One Thousand Dollars ($1,000). Kenst delivered the cocaine purchased in the two transactions to Agent Gahagan.

Gahagan returned alone to the Speed Shop on December 5, 1979 and again purchased one-half ounce of cocaine from appellant for Nine Hundred Fifty Dollars ($950).

On December 12, 1979, Gahagan procured from appellant one ounce of cocaine at a cost of One Thousand Eight Hundred Seventy-Five Dollars ($1,875), as well as one hundred (100) dosage units of LSD for the price of One Hundred Sixty Dollars ($160).

Agent Gahagan met with appellant at the Speed Shop on December 21, 1979 in order to secure an additional four grams of cocaine which appellant agreed to furnish on the previous day. Upon his arrival at the shop, Gahagan was shown two of the promised four ounces of the drug and was advised to wait for the remaining half of his order which, he was told, was due to be delivered to the Speed Shop by

appellant's supplier within minutes. At approximately 2:20 p.m., a vehicle driven by an individual subsequently identified as appellant's confederate, George Gordon, pulled to a stop in front of the store. Gordon alighted from his automobile and entered the store where he met with appellant for a brief period. After Gordon departed from the premises, appellant informed Agent Gahagan that the additional two ounces of cocaine had just been delivered by his supplier and that he was now prepared to conclude the transaction. Gahagan then identified himself as a policeman and attempted to place appellant under arrest.

Upon learning Gahagan's true identity, appellant fled the store clutching a tan-colored jacket which he quickly discarded on the street. Other law enforcement officers who were secretly observing the proceedings in the Speed Shop gave chase to appellant and apprehended him in short order. After appellant was taken into custody, his jacket was impounded and a cursory search conducted of its pockets without a warrant. This inspection yielded a plastic bag containing approximately seven grams of cocaine.

Following on the heels of appellant's arrest was the issuance of a search warrant for his apartment. Acting pursuant to the warrant, law enforcement officials confiscated small amounts of cocaine and marijuana as well as a scale allegedly used in weighing drugs.

By a pre-trial motion, which was subsequently denied by the court, trial counsel for appellant had moved to suppress evidence of the seizure of the controlled substances from appellant's residence. Counsel did not endeavor to suppress the Commonwealth's use of the cocaine removed from appellant's jacket after his apprehension. In addition, he did not oppose the consolidation in one trial of the fifteen separate criminal offenses with which appellant was charged. Counsel did, however, seek a continuance of the trial four days prior to its scheduled commencement. The reason stated in support of this request was counsel's inability to obtain a treatise entitled "Cocaine: Legal and Technical Defenses in Cocaine Prosecutions." Counsel con-

tended that the book was necessary in his preparation for trial given the fact that he had never previously represented a defendant in a case involving cocaine. The trial judge refused to grant the continuance and directed appellant to proceed to trial.

In taking this appeal, appellant raises fifteen issues for our resolution. We will address them in seriatim fashion.

### 1.

Appellant first contends that the evidence adduced by the Commonwealth at trial was insufficient as a matter of law to prove him guilty of the various "cocaine offenses" with which he was charged. The crux of this argument is that the Commonwealth failed to prove beyond a reasonable doubt an essential component of each of the crimes charged, *viz.*, that the substance which appellant sold to an undercover state trooper, and which was later confiscated from appellant's person and residence, was a "controlled substance" as that term is defined in Schedule II of the Act. Appellant maintains that under the terms of Section 104(2)(i)(4) [7] of the statute, cocaine will qualify as a controlled substance only if it is that variety of cocaine which is naturally derived from coca leaves. He posits that only L-cocaine is proscribed under this section since, as the testimony elicited at trial clearly established, it alone among the eight varieties or isomers of cocaine extant is produced directly through extraction from coca leaves. Consequently, he argues that because the testing procedures employed by the Commonwealth's chemists on samples of the cocaine seized from him were incapable of distinguishing between the naturally occurring L-cocaine and a synthetically produ-

---

**7.** 35 P.S. § 780–102(b) defines a "controlled substance" as any drug or substance included in Schedules I through V of the Act. Under Schedule II, 35 P.S. § 780–104(2), a controlled substance includes:

. . . . .

(4) *Coca leaves and any salt, compound, derivative,* or preparation of coca leaves, and any salt, compound derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but shall not include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine *(emphasis added).*

cible form of cocaine known as D-cocaine, the Commonwealth failed to meet its burden of proving beyond a reasonable doubt that the substance in question was in fact a "controlled substance." We are not persuaded by this argument.

At trial, appellant presented as his only witness Dr. Gordon R. Johnston, a professor of organic chemistry at the Pennsylvania State University. Dr. Johnston testified that the term "cocaine" is meaningful only in a generic sense and that in reality, there are eight distinct isomers of cocaine. Isomers are two or more compounds which share with one another the same molecular formula while possessing different structural arrangements and properties. Dr. Johnston averred that only the isomer L-cocaine occurs naturally in coca leaves. Thus, appellant argues that since only L-cocaine is derived naturally from coca leaves, it alone is a controlled substance, and because the Commonwealth was unable to distinguish between L-cocaine and the synthetically producible form of cocaine known as D-cocaine, the charges filed against appellant were not proved beyond a reasonable doubt. In other words, appellant contends that the tests conducted by the Commonwealth chemists in analyzing the substance sold by appellant to Agent Gahagan as "cocaine" failed to winnow the allegedly non-prohibited from the prohibited isomeric forms of cocaine.

The Commonwealth's expert witnesses, two forensic chemists, Scott Ermlick and Christine Tomsey, described the techniques utilized in testing the drugs as well as their views on the actual identity of the substance. These chemists concurred in the testimony elicited from Dr. Johnston concerning the existence of eight separate types of cocaine. Scott Ermlick agreed with Dr. Johnston that of these various isomers, only L-cocaine is found in coca leaves, but in addition, testified that D-cocaine is a synthetically producable form of cocaine. Both Ermlick and Tomsey testified under cross-examination that the four tests which they performed on the substance did not conclusively identify it as L-cocaine. They did state, however, that from the per-

formance of a color test, a sniff test, a micro-crystal test and an infra-red spectraphotometry test, they were able to confirm the presence of only two of the eight isomeric forms of cocaine known to exist. These isomers were identified as the synthetic D-cocaine and the organic L-cocaine. The issue then becomes whether only L-cocaine is a controlled substance or whether D-cocaine also fits into this category.

■ We find that, contrary to appellant's representations, the terms of Section 104 make clear that the statute's prohibitory sweep is sufficiently wide so as to embrace those varieties of cocaine which are susceptible of synthetic derivation. Paragraph (i) of Section 104(2) of the Controlled Substance, Drug, Device and Cosmetic Act furnishes this description of a Schedule II controlled substance:

(i) Any of the following substances ... *whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis,* or by combination of extraction and chemical synthesis: (Emphasis added).

35 P.S. § 780.104(2).

■ Thus, it is readily apparent that the framers of the Act, given the statute's broad aim of protecting citizens of this Commonwealth from the deleterious effects of certain harmful drugs, intended to prohibit all varieties of cocaine including that derived directly from coca leaves as well as that synthetically produced in the laboratory, such as D-cocaine, which the Commonwealth's experts identified in this case. Insofar as both parties to the instant appeal agree that the Commonwealth's laboratory experts conclusively identified the white powder seized from appellant as being either the naturally-occurring L-cocaine or the synthetic D-cocaine, and in view of our holding that the Act proscribes cocaine in both its natural and synthetic forms, the Commonwealth's evidence was more than sufficient to uphold appellant's conviction of the numerous cocaine offenses.

■ In measuring the sufficiency of evidence forming the basis of a criminal conviction, we must inquire whether—accepting as true all the evidence upon which a jury could properly have based its verdict, together with all reasonable inferences therefrom—such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Waller*, 498 Pa. 33, 42, 444 A.2d 653, 658 (1982). As always, the evidence is to be regarded in the light most favorable to the Commonwealth, the verdict winner. *Commonwealth v. Plusquellic*, 303 Pa.Superior Ct. 1, 4, 449 A.2d 47, 49 (1982).

Applying this standard of review to the facts of the instant controversy, the evidence adduced by the Commonwealth at trial established beyond a reasonable doubt that the white powder in question is a Schedule II controlled substance within the meaning of Section 104(2) of the Act.

■ In so ruling, we necessarily dismiss as untenable the interpretation accorded to the language of Section 104(2) by appellant, the nub of which is that the Act renders illegal only those varieties of cocaine which are derived naturally from the leaves of the coca plant. Our holding does not rest upon decisional precedent since, to our knowledge, none exists which proves dispositive of the matter at hand. Rather, we turn for guidance to the mandates of the Pennsylvania Statutory Construction Act, 1 Pa.C.S.A. § 1901 et seq., which provides that "[w]ords and phrases shall be construed ... according to their common and approved usage." *Id.* at 1903(a). *See* also *Wajert v. State Ethics Commission*, 491 Pa. 255, 420 A.2d 439 (1980); and *Kury v. Commonwealth State Ethics Commission*, 62 Pa.Cmwlth. 174, 435 A.2d 940 (1981). Also instructive is that canon of statutory construction which requires a reviewing court to assume that the legislature did not intend its enactments to contain mere surplusage. *Turner v. May Corporation*, 285 Pa.Superior Ct. 241, 427 A.2d 203 (1981). Instead, a court construing the language of a statute is obligated to presume that the legislature wished to confer effect to its every word. 1 Pa.C.S.A. § 1921(a). *See* also

*Crusco v. Insurance Company of North America,* 292
Pa.Superior Ct. 293, 437 A.2d 52 (1981); and *Southeastern
Pennsylvania Transportation Authority v. Weiner,* 56
Pa.Cmwlth. 104, 426 A.2d 191 (1981). Our adoption of
appellant's construction of Section 104(2) would necessarily
entail the concurrent jettisoning of a paragraph from the
Act's operative language which, to our minds, proves dis-
positive of the issue at hand. Consequently, we reject
appellant's construction of the Act.

### 2.

Appellant next avers that the Commonwealth failed to
adduce evidence sufficient to sustain his conviction for
possession with intent to deliver and delivery of LSD.[8]
Maintaining that the Commonwealth's testing procedures
were defective in failing to unequivocally identify the pink
tablets sold by appellant to Agent Gahagan as LSD, he
asserts that his conviction should be vacated. We find no
merit to this claim and affirm the conviction.

■ Viewing the evidence, as we must, in the light most
favorable to the Commonwealth as verdict winner below,
*Commonwealth v. Young,* 494 Pa. 224, 431 A.2d 230 (1981);
*Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545, 546
(1975), we conclude that the Commonwealth proved beyond
a reasonable doubt that the pink tablets in question were
LSD.

On direct examination the Commonwealth's expert, Scott
Ermlick, testified that he had performed two separate tests
on the suspected LSD, a color chromatography test and a
thin layer chromatography (TLC) test. He explained the
color chromatography test as follows:

Again, I used the color test to try and determine what
was contained, or a broad classification. That test indi-
cated to me that this was probably lysergic acid, common-

8. Lysergic Acid Diethylamide.

ly referred to as LSD. From that, I proceeded to use thin layer chromatography.

He then explained the TLC test:

Thin layer chromatography is a system of separation of compounds. What you have is a glass plate that has an absorbent compound on it; in this case it was silica gel. An extract is made of the tablets, and it is placed dotted on the bottom of the plate. An extract of a known sample is made and also dotted alongside of it. These are placed into different small chambers that have various ratios of solvents in them, and what will happen is, once these plates are placed in the tank, the solvents, the liquid at the bottom, will migrate up the plate, and depending on the weight and the polarity—the weight, of the unknown and the polarity of the solvents, these unknowns will settle out at different heights, and the plates are taken out, dried, examined under ultraviolet light and sprayed with a visualization spray, and by measuring them, you can identify a drug.

Finally, Mr. Ermlick stated his conclusion that the substance tested was LSD.

On cross-examination Mr. Ermlick stated that the color chromatography test is a "presumptive test" in that it only indicates the possible presence of a substance. He also stated that the TLC test is not a specific test for LSD. On re-direct examination Mr. Ermlick restated his direct testimony to the effect that the TLC test involves comparing a questioned substance, *i.e.,* the pills appellant had sold to the undercover agent, with a known substance, *i.e.,* LSD.

Appellant's expert, Dr. Gordon R. Johnston, testified that the TLC test will only "give [the chemist] a good lead as to what [the substance] might be." In his view, with positive results of a TLC test, an infra-red analysis should be done. Dr. Johnston further stated that while he had never performed a TLC test on LSD, in his view in "three out of four times it may not be correct." Then, however, he stated that when the TLC test is performed with a control sample, it is "rather accurate."

Given the particular facts 1.) that Mr. Ermlick stated that he had used a control sample of LSD in the TLC test and found that the substance suspected of being LSD matched the sample and 2.) that appellant's own expert, Dr. Johnston, conceded that when the TLC test is performed with a control sample, that test is "rather accurate," the evidence is sufficient to support the challenged conviction.

### 3.

 Additionally, appellant argues that he is entitled to a dismissal of the charges lodged against him in Information Number 162[9] for the reasons that (a) the District Attorney did not sign the information personally; and (b) the individual who in fact signed the information was not authorized to act in the District Attorney's stead in the manner prescribed by the Judicial Code.[10] It is now settled that the failure of the District Attorney to sign a criminal information, in violation of Pa.R.Crim.P. 225(b), which requires such signature in order to guarantee the authenticity and reliability of the information, renders the information merely voidable since this defect is susceptible of prompt cure by amendment if the matter is raised by the defendant in a pre-trial motion to quash filed pursuant to Pa.R.Crim.P. 306. *Commonwealth v. Veneri and Thomas*, 306 Pa.Superior Ct. 396, 452 A.2d 784 (1982). Insofar as this defect is capable of meaningful remedy only during the pre-trial phase of a criminal prosecution,[11] we ruled in *Veneri* and

**9.** One count of possession of cocaine; one count of possession with intent to deliver cocaine; and one count of possession of marijuana.

**10.** In previous cases, our courts have approved of informations which have been rubber-stamped with the name of the District Attorney and then initialed by one of his assistants in situations where the Commonwealth has adduced proof adequate to satisfy the reviewing court that the authority of the District Attorney's designee has been filed with the county Clerk of Courts. *See Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284 (1981); *Commonwealth v. Dupree*, 290 Pa.Superior Ct. 202, 434 A.2d 201 (1981); *Commonwealth v. Levenson*, 282 Pa.Superior Ct. 406, 422 A.2d 1355 (1980); and 42 Pa.C.S.A. § 8931. Instantly, however, the record is devoid of the requisite proof of the assistant District Attorney's designation. Moreover, Information Number 162 was not stamped with the facsimile of the District Attorney's signature unlike that discussed in *Contakos, supra.*

**11.** In his Opinion written for an en banc panel of the Court, Judge Cavanaugh offered this cogent rationale for the holding in *Veneri* and *Thomas:*

Our reasoning is two-fold. First, it is clear that the absence of a signature does not prejudice the defendant in his preparation for trial. Secondly, it is un-

*Thomas* that a defendant's failure to challenge the propriety of a signature appended to an information through the filing of a pre-trial motion to quash, results in the waiver of that claim for purposes of appellate review. Appellant in the case at bar first challenged the signature in his appeal to this Court. Consistent with our disposition in *Veneri* and *Thomas,* we view appellant's claim as untimely and thus refuse to entertain its merits.

### 4.

Appellant's fourth allegation of error, namely, that the lower court erred in refusing to dismiss Informations Number 32 [12] and Number 33 [13] due to an alleged missing link in the chain of custody, is similarly incapable of resolution on appeal. In light of the decision rendered by our Supreme Court in *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979), we may address only those issues which have been propounded with particularity in post-verdict motions. Inasmuch as this matter was not raised by appellant in his motions in arrest of judgment and for a new trial, we regard it as waived.

### 5.

Appellant maintains that the lower court erred in instructing the jury as to the disputed issues in the case, in particular the issues presented in the complex "isomer defense" theory which he advanced at trial. He directs our

realistic to assume that Pa.R.Crim.P. 255(b) intended the signature of the attorney for the Commonwealth to be the exclusive deliberative act which charged the defendant and that its absence annuls the validity or integrity of an otherwise untainted prosecution process. If the case has gone on to a point where the information has lost any meaning, i.e., where the Commonwealth has begun to support the charges by proof at trial or the defendant stands convicted, to even require a signature at that stage would be not only meaningless but a mere technical vanity. To upset a just verdict for want of a signature would be judicial slight of hand of totally unacceptable proportions. (at 788).

12. Information Number 32 charged appellant with one (1) count of delivery of cocaine, and one (1) count of possession of cocaine.

13. Information Number 33 charged appellant with one (1) count of delivery of LSD, and one count of possession of cocaine.

attention to the admittedly articulate instructions with which District Judge Robert W. Warren charged the jury in *United States v. Orzechowski,* [14] *supra. See* 547 F.2d at 982–83, ns. 3 & 4. Appellant asserts that when compared with the *Orzechowski* charge, the instructions given by the lower court in the instant case did not sufficiently apprise the jury of its obligation to acquit him of the cocaine offenses unless it concluded that the Commonwealth proved beyond a reasonable doubt that the substance in question was a derivative of coca leaves, or, in the alternative, was chemically equivalent or identical to a derivative of coca leaves. Moreover, he urges that since his Proposed Instruction No. 8, [15] in which he advanced his chemical isomer

---

**14.** As in the case *sub judice,* appellant in *Orzechowski* maintained on appeal that the Government failed to prove beyond a reasonable doubt that the substance which he sold to an undercover federal Drug Enforcement agent constituted that form of cocaine which is described as a "controlled substance" under Schedule II of the Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. § 812(b)(2). Schedule II(a)(4), contained within Section 812 of the Act, provides the following definition of a controlled substance in language identical to that employed in 35 Pa.C.S.A. § 780.104(2)(i)(4):

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is *chemically equivalent or identical* with any of these substances (Emphasis added).

Orzechowski argued that the tests performed on the substance by government chemists did not establish that the powder was the naturally-occurring L-cocaine, and that, if the powder was D-cocaine, there was insufficient proof that L- and D-cocaine are chemically equivalent or identical.

**15.** *Defendant's Proposed Instruction No. 8*

The defendant's theory of this case is as follows: The Controlled Substances Act applies only to cocaine of the kind which is derived from coca leaves, or which is chemically equivalent or identical to such natural cocaine. Cocaine has 8 separate and distinct isomers. Of these, only one, called L-cocaine, is derived from coca leaves. The other 7 cocaine isomers are not chemically equivalent or identical with L-cocaine because they have different physical and chemical properties and physiological effects. The Controlled Substances Act does not prohibit the distribution of those isomers of cocaine which are neither the natural product of the coca leaf nor the chemical equivalent of such natural product.

If the evidence you have heard in support of the defendant's theory creates in your mind a reasonable doubt that the tests performed in this case are specific for either a derivative of coca leaves or a substance which is chemically equivalent or identical to such a substance, then you must find the defendant not guilty.

defense theory, embodied a concise statement of the issues to be resolved by the jury, the lower court erred in refusing his requested instruction.

■■■■■ It is clear that a trial judge may properly refuse to read points for charge submitted by defense counsel which do not reflect a proper articulation of the law of our Commonwealth. *Commonwealth v. Strong*, 484 Pa. 303, 399 A.2d 88 (1979); and *Commonwealth v. Holland*, 480 Pa. 202, 389 A.2d 1026 (1978). Inasmuch as we have rejected in its entirety appellant's theory that the Act only prohibits those isomers of cocaine which are the natural product of the coca leaf and their chemical equivalents, we hold that the trial court properly refused appellant's proposed instruction since it constituted an erroneous statement of the law.[16]

## 6.

■■■ Appellant also cites as error the failure of the lower court to advise the jury that it should regard with heightened scrutiny the testimony of the Commonwealth's informant, Dale W. Kenst, Jr., who purchased cocaine from appellant on behalf of undercover agent Gahagan on October 26, 1979.[17] Concurrently, appellant charges that trial counsel was ineffective in not requesting this so-called

---

16. We acknowledge that the positions we take today with respect to the issues raised by the "cocaine isomer defense" and, ultimately, the construction to be accorded to the language of 35 P.S. § 780.104(2)(i), are at odds with those adopted by certain federal circuit courts which, interpreting a similarly-phrased federal statute, 21 U.S.C. § 812(b)(2), have ruled that cocaine will constitute a Schedule II controlled substance only so long as it is capable of derivation from coca leaves. *See e.g., United States v. Posey*, 647 F.2d 1048, 1053 (10th Cir.1981); and *United States v. Luschen*, 614 F.2d 1164, 1169 n. 2 (8th Cir.1980). Since the federal Comprehensive Drug Abuse Prevention and Control Act of 1970 appears to have served to some extent as a model for Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act of 1972, these federal decisions may offer some guidance to Commonwealth courts in the construction of our own statute. Nevertheless, we are in no way bound by these cases and are free to reject their holdings, particularly where, as here, the federal position remains ambiguous. *Danson v. Casey*, 33 Pa.Cmwlth. 614, 382 A.2d 1238 (1978), *aff'd* 484 Pa. 415, 399 A.2d 360 (1979); *Abington Educational Association*, 32 Pa.Cmwlth. 563, 379 A.2d 1371 (1977). *See United States v. Ortiz*, 610 F.2d 280, 281 n. 1 (5th Cir.1980); and *United States v. Bockius*, 564 F.2d 1193, 1194 n. 1 (5th Cir.1977).

17. As a result of this transaction, appellant was charged in Information Number 31 with two counts of delivery of cocaine, and two counts of possession of cocaine.

"corrupt source" charge, and in not objecting to its exclusion from the court's instructions.[18] We have held that a trial court may properly refuse to grant a defendant's point for charge, which posits that police officers and informants have an interest in the outcome of the case, where the court provides a general instruction that the jury must consider in its deliberations the potential bias or interest with which any witness may have testified. *Commonwealth v. Vickers*, 260 Pa.Superior Ct. 469, 394 A.2d 1022 (1978). With respect to the credibility to be accorded the testimony of witnesses appearing at trial, the lower court offered this guidance:

You, members of the jury, must determine what witnesses you will believe in order to determine what facts you find to be true, and we speak of that as passing upon the credibility of the witnesses, determining what credit their testimony is entitled to. In determining that, you take into consideration the means of knowledge of the matters to which they have testified, their appearance and their manner upon the stand when testifying, any interest that the witnesses may have in the outcome of the case, and considering all of these matters and using your own good judgment and experience, you will determine what witnesses you will believe and, therefore, what facts you find to be true.

Since this general instruction adequately covered the matter of witness credibility, the court did not err in providing a more explicit "corrupt source" charge.

In measuring the adequacy of an attorney's representation of his client, we are constrained to return to the test enunciated by our Supreme Court in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). In that case, the Court ruled that inquiry ceases

---

18. Trial counsel did not preserve this issue for our review by timely objecting to the court's charge or by raising the matter in post-verdict motions. However, we do not regard it as waived since it now appears before us in the context of a claim of ineffectiveness of counsel, and is being asserted at the first opportunity by new counsel retained for purposes of this appeal. *Commonwealth v. Seachrist*, 478 Pa. 621, 387 A.2d 661 (1978); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

and counsel's stewardship is deemed constitutionally effective "once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests." *Id.* 427 Pa. at 604–05, 235 A.2d at 352–53 (Emphasis in original). Since *Maroney,* however, it has become settled law that counsel will not be deemed ineffective for his failure to assert a baseless claim, since under no circumstances can it be said that such an avenue would offer a significantly enhanced prospect for success than the route actually chosen. *Commonwealth v. Hubbard, supra,* 472 Pa. at 278, 372 A.2d at 694–95.[19] Having previously concluded that the "corrupt source" charge was not mandated in the instant case, we are now unable to regard trial counsel as ineffective for his failure to request such an instruction or to object to its absence from the charge as given. Consequently, we perceive no merit in appellant's argument.

### 7.

We find no merit in appellant's assertion that the lower court failed to charge the jury, in conjunction with its instructions concerning the crime of possession with intent to deliver a controlled substance, on the lesser included offense of possession of a controlled substance.[20] The most casual inspection of the notes of testimony discloses that the trial judge took considerable care in guiding the jury with explicit instructions concerning the offense of possession of a controlled substance. That counsel declined to advance this argument at trial or in post-verdict motions is commendable in view of its frivolity. We reiterate our oft-stated position that trial counsel will not be labelled as ineffective for his or her failure to pursue an untenable claim for relief. *Commonwealth v. Hubbard, supra.*

**19.** *See* also *Commonwealth v. Hernandez,* 498 Pa. 405, 414, 446 A.2d 1268, 1273 (1982); *Commonwealth v. Boyd,* 300 Pa.Superior Ct. 539, 542, 446 A.2d 1290, 1292 (1982); *Commonwealth v. Hook,* 300 Pa.Superior Ct. 181, 185, 446 A.2d 290, 292 (1982).

**20.** Insofar as appellant's counsel failed to interpose timely objection at trial concerning this question and did not raise the matter in post-verdict motions, we address the merits of this assignment of error solely for the purpose of resolving the claim of ineffectiveness of counsel.

8, 9 and 10.

▇▇▇ Appellant asserts in his next three (3) arguments that the lower court erred in refusing several of his points for charge. The court was unwilling to read Point No. 4, which referred to the Commonwealth's burden of proving appellant guilty beyond a reasonable doubt; Point No. 10, which discussed the credibility to be accorded to the testimony of witnesses employed by the Commonwealth; and Point No. 13, which emphasized the jury's duty to base its decision in the case solely on the evidence presented by both parties at trial. The court's general charge adequately embraced those legal principles advanced by the submitted points and thus the trial court correctly dismissed the points as superfluous. *Commonwealth v. Strong, supra; Commonwealth v. Johnston,* 258 Pa.Superior Ct. 429, 392 A.2d 869 (1978). We have carefully reviewed appellant's argument that the trial court erred in refusing his points for charge on reasonable doubt, credibility of witnesses, and evidence to be considered by the jury, and find it to be without merit.

11.

▇▇▇ Appellant poses the additional challenge to the court's charge that it failed to convey to the jury its duty to convict appellant of conspiracy only if it was convinced beyond a reasonable doubt that the object of the conspiracy was the delivery of a form of cocaine prohibited by statute. We reject this assertion. Viewing in its entirety that portion of the court's instructions which set forth the elements of the crime of conspiracy, we believe that the charge sufficiently impressed upon the jury the fact that a conspiracy conviction must rest on proof beyond a reasonable doubt that the white powder delivered by George Gordon to appellant for purposes of resale was in fact a controlled substance. Our decision is grounded upon the fact that the court discussed the delivery of cocaine as the criminal objective to have been furthered by the conspiracy, and emphasized that if all of the elements of the conspiracy

offense were not proven beyond a reasonable doubt, the jury had the duty to acquit appellant of the conspiracy charge. We see no need to impose any greater burden on the trial court with respect to its charge in this matter.

### 12.

Appellant alleges also that his trial counsel was ineffective in not opposing consolidation of the six separate informations [21] on which he was tried. Appellant argues that he was substantially prejudiced by the consolidation in that it encouraged the jury to infer a criminal disposition from the sheer weight of the number of offenses with which he was charged, and to cumulate the evidence of the various offenses to convict him when, had each offense been tried separately, he might have been acquitted.

Traditionally, the consolidation or severance of separate indictments or informations has been viewed as a matter of discretion for the trial judge, whose decision will not be reversed in the absence of a manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Morris*, 493 Pa. 164, 425 A.2d 715 (1981); *Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690 (1975); and *Commonwealth v. Patrick*, 416 Pa. 437, 206 A.2d 295 (1965). The justification often advanced for the consolidation of separate indictments or informations is the judicial economy which results from a single trial. Weighing against consolidation, however, is the possibility that irrelevant and prejudicial evidence will influence the jury in its deliberations on each particular offense. Consequently, evidence of a distinct crime is generally held inadmissible against an accused who is being tried for another crime since the perpetration of one crime is not proof of the

**21.** Information *No. 30,* one count of possession of cocaine, and one count of possession with intent to deliver cocaine; *No. 31,* two counts of delivery of cocaine, and two counts of possession of cocaine; *No. 32,* one count of delivery of cocaine, and one count of possession of cocaine; *No. 33,* one count of delivery of LSD, and one count of possession of cocaine; *No. 34,* one count of delivery of cocaine, and one count of possession of cocaine; *No. 162,* one count of possession with intent to deliver cocaine, one count of possession of cocaine, and one count possession of marijuana.

commission of the other. *Commonwealth v. Morris, supra.* Nevertheless, this general principle admits of an exception in cases where evidence of another crime is to be introduced in order to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes which are so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial under circumstances where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. *Commonwealth v. Morris, supra; Commonwealth v. Lasch, supra; Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973); *Commonweath v. Fortune,* 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955). Regardless of its relevancy, however, evidence of other crimes will not be admitted if its probative value is eclipsed by its tendency to prejudice the jury.

■ We agree with appellant's position that the various illicit drug transactions he completed with Dale Kenst and Agent Gahagan between October 26, 1979 and December 21, 1979 do not share with one another such a high correlation in details that they may fairly be said to reflect a distinctive modus operandi as the Supreme Court defined that term in *Morris.* Nevertheless, we reject appellant's claim that the trial court erroneously permitted consolidation of the informations, and that trial counsel was ineffective in not opposing the consolidation. Our decision rests upon three independent grounds. First, it is clear that the evidence of the offenses in each of the informations would be admissible in a separate trial of the others because they constitute a continuous series of transactions relevant to the question of the criminal motive and intent with which appellant possessed and sold the controlled substances. Second, the evidence as to the crimes charged in each information was succinct and uncomplicated and was, there-

fore, capable of separation by the jury so as to eliminate any risk of confusion. Finally, we perceive no prejudice inuring to appellant as a result of the consolidation. His only viable defense to the charges advanced in each information, and that which was in fact presented at trial, was the alleged inability of the Commonwealth to identify the confiscated drugs as controlled substances. Appellant fails to specify the additional defense strategies which were forestalled by the consolidation and we believe that none actually exist. The granting of a severance in the case at bar would only have resulted in a waste of judicial resources since each separate trial of the six different informations would also have focused on the chemical identity of the substances in question.

## 13.

Appellant next argues that trial counsel was ineffective in not moving to suppress the cocaine seized from appellant's jacket which itself was retrieved by police officers after appellant discarded it in his unsuccessful attempt to elude arrest. In light of our decisions rendered in previous cases, there is no question but that abandoned property may be obtained by police and employed by the prosecution for evidentiary purposes, provided that the abandonment was not induced by illegal police action. *Commonwealth v. Williams*, 269 Pa.Superior Ct. 544, 410 A.2d 835 (1979); *Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Shoatz*, 469 Pa. 545, 366 A.2d 1216 (1976); *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973). As we stated in *Commonwealth v. Williams, supra:*

> [t]he issue is not abandonment in the strict property-right sense, but whether appellant voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it. *Id.*, 369 Pa.Superior Ct. at 547, 410 A.2d at 836 [citations omitted].

■ In the instant case, there was no unlawful or coercive police action. Appellant, at the time he relinquished possession of the jacket containing the cocaine, was fleeing from an arrest fully supported by probable cause since the arresting officer had just completed the purchase of a controlled substance from appellant. Having abandoned the jacket and all substances contained within its pockets, appellant no longer enjoyed an expectation of privacy with respect to the articles and thus cannot now complain that they were seized and introduced as evidence at trial. Insofar as a suppression court would be fully justified in denying a motion to suppress the cocaine discovered in appellant's jacket, we are unable to regard trial counsel as ineffective for his failure to file such a motion in pursuit of what would prove a meritless claim for relief.

## 14.

■ Appellant also avers that trial counsel was ineffective in his cross-examination of two of the Commonwealth's witnesses. Specifically, he maintains that counsel should have more vigorously explored the subject of the payments or promises made to Kenst by Agent Gahagan or other law enforcement officials for his services as a police informant. We reject this contention for two reasons.

First, our review of the record discloses that appellant's counsel elicited from Kenst and Gahagan on cross-examination the fact that Kenst had drug-related charges pending against him at the time of trial, that Kenst himself was a user of drugs, and that Kenst was paid to testify against appellant. Moreover, responding to a question asked by the prosecutor on direct examination, Kenst stated that he was not testifying pursuant to an agreement made with the Commonwealth concerning the disposition of the charges then pending against him. In short, virtually all of the matters which appellant asserts his counsel failed to pursue in his questioning of Kenst and Gahagan, with the exception of the specific amount paid to Kenst and the manner of the payment, were in fact brought to the jury's attention by

the defense and prosecution. Second, we cannot conclude that trial counsel's stewardship was constitutionally ineffective as a result of his decision to forego an investigation into the specific details surrounding the payments made to Kenst by the Commonwealth. Although this information would be relevant to the question of whether Kenst's testimony was grounded upon some bias or improper motive, we view counsel's failure to discuss the matter as a strategy decision. Clearly, the defense presented by counsel at trial focused almost exclusively upon the chemical identity of the substances seized from appellant. Having previously raised the issue of Kenst's credibility before the jury, counsel obviously believed there was no need to proceed further with a line of questioning which could not possibly have fortified appellant's defense and which could only serve to divert the jury's attention from what counsel perceived as the central issue of the case. Thus, employing a hindsight evaluation of the record, we conclude that counsel's conduct with respect to his examination of Dale Kenst and Agent Gahagan enjoyed some reasonable basis designed to promote appellant's interests. *Commonwealth ex rel. Washington v. Maroney, supra.* Consequently, we reject appellant's claim that he was denied his right to the effective assistance of counsel.

### 15.

Finally, appellant maintains that the trial court abused its discretion in denying appellant's motion for continuance which was filed on May 1, 1980, four days prior to the scheduled date of the trial's commencement. The primary reason advanced in support of the motion was counsel's inability to obtain a treatise entitled "Cocaine: Legal and Technical Defenses in Cocaine Prosecutions." Counsel maintained that the book was necessary in his preparation for trial since he had never before acted as defense counsel in a case involving cocaine. Well entrenched is the principle that "an appellate court will not find an abuse of discretion if the denial of the continuance did not prejudice appellant." *Commonwealth v. Waters,* 276 Pa.Superior Ct. 584, 591,

419 A.2d 612, 615 (1980). *See* also *Commonwealth v. Eackles*, 286 Pa.Superior Ct. 146, 428 A.2d 614 (1981). Trial counsel enjoyed nearly four months time in which to prepare appellant's defense based upon applicable case law. Moreover, the trial court previously agreed to continue the case upon appellant's motion filed on March 21, 1980. The court did not abuse its discretion in refusing to continue the case for a second time merely because trial counsel could not locate a particular treatise. In addition, appellant is unable to specify what action counsel failed to take as a consequence of the court's denial of the requested continuance. Our review of trial counsel's management of the case leads us to conclude that appellant was in no way prejudiced by the absence of the treatise from his defense arsenal. To the contrary, we regard counsel's vigorous examination of both defense and Commonwealth chemists as falling entirely within the bounds of what our courts have come to characterize as constitutionally effective stewardship. Indeed, we agree with appellant that Judge Wisdom's comments, concerning the presentation of the "cocaine isomer defense" in a federal prosecution, enjoy particular relevance to the instant controversy:

> There was much throwing about of brains. Defense counsel exhibited models of the molecular structure of cocaine isomers and skillfully extracted from his expert and the government expert as much or more knowledge of the cocaine isomers than a jury could absorb. *United States v. Bockius, supra,* 564 F.2d at 1194.

Discerning no merit in appellant's assignment of error, we affirm.

Judgments of sentence affirmed.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

The majority relies on *Commonwealth v. Vickers,* 260 Pa.Super. 469, 394 A.2d 1022 (1978), for the proposition that a general charge to the effect that in assessing a witness's

credibility, the jury should consider any interest the witness may have in the outcome of a case, is always an adequate substitute for a more specific charge to the effect that a government informant may have penal and pecuniary interests in testifying favorably to the Commonwealth. Maj. op. at 433–434. On that basis, the majority concludes that a request by appellant's trial counsel for the more specific charge would have been baseless. Maj. op. at 434–435. I am not persuaded that such a request would have been baseless.

First, I should not derive from *Vickers* the broad proposition that a general charge is always an adequate substitute for a specific charge that a government informant may have penal and pecuniary interests in testifying favorably to the Commonwealth: that we held a general charge adequate in the circumstances presented in *Vickers* does not mean that it will be adequate in all conceivable circumstances. In addition, even if a specific charge were never mandatory, it would not follow that a request for such a charge would be baseless: such a charge is at least permissible. *Commonwealth v. Carey*, 293 Pa.Super. 359, 372–374, 439 A.2d 151, 158–59 (1981).

I nevertheless believe that here trial counsel may have had a reasonable basis for failing to request a specific charge. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). First, Charles A. Gahagan of the Pennsylvania Drug Control Bureau admitted on cross-examination that the informant, Dale W. Kenst, Jr., had been paid for his services in the past. N.T. 33. Second, Kenst acknowledged that he had recently been caught by the police at a keg party with drug paraphernalia on his person, and that he was a marijuana smoker and criminal charges relating to his drug use "ha[d]n't come down yet .... [; that he didn't] know what [was] going to happen yet." N.T. 24–26. And finally, Gahagan not only corroborated but expanded upon Kenst's story in considerable detail. N.T. 22–24; 35–37. Appellant's trial counsel thus may well have concluded that the jury was already aware of Kenst's penal and pecuniary interests, and that even if it

444

wasn't, nothing would be gained from requesting a charge specifically referring to those interests, for such a charge couldn't undermine Gahagan's testimony.

I therefore concur in the majority's conclusion that appellant's trial counsel was not ineffective.