J-S64024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QENTIN M. SALMOND | : | |
| | : | |
| Appellant | : | No. 722 EDA 2018 |

Appeal from the PCRA Order February 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009615-2012

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                **FILED JANUARY 23, 2019**

Appellant, Qentin M. Salmond, appeals from the order entered on February 20, 2018, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On direct appeal, we previously set forth the facts of this case, as summarized by the trial court, as follows:

> On April 12, 2008, at about 12:30 p.m., Joan Hill was working at an insurance office located at 5637 Chew Avenue when she saw a blue Lincoln town car park with the engine running on Woodlawn Avenue. A man, later identified as [Appellant], dressed in women's Muslim clothing exited the vehicle. Hill believed the man was going to rob Skyline Restaurant, located around the corner, so she called 9–1–1 and gave the license plate number of the vehicle.
>
> At around noon that day, Kerron Denmark and Kenneth Wiggins went to Skyline Restaurant and Wiggins ordered food. Immediately after they left the restaurant with Wiggins carrying his food, a man approached them asking for marijuana. As Denmark and Wiggins were walking down the street someone yelled "don't f'ing move." Denmark heard gunshots and ran away.

[A]t 12:44 p.m., [on that same day] while on routine patrol, Police Officer Christopher Mulderrig was flagged down by a man on the street and told there had been a shooting about two blocks away. When Officer Mulderrig arrived at 5643 Chew Avenue, he observed a male, later identified as Wiggins, lying in the street with a gunshot wound to the chest. Wiggins subsequently died from this [injury].

After the murder, Detective Thorsten Lucke recovered surveillance video from Skyline Restaurant. The surveillance video showed Wiggins and Kerron Denmark enter Skyline Restaurant. While the men [were] inside the restaurant, a vehicle [drove] by on Chew Avenue and [turned] left at the corner. [Co-d]efendant [Jamil] Banks[1] and [Appellant], wearing women's Muslim clothing, emerge[d] from the area where the car had turned from Chew Avenue. The defendants walk[ed] towards Skyline Restaurant. [Appellant] stop[ped] in an alley while [co-]defendant Banks enter[ed] the restaurant. [Co-d]efendant Banks [bought] a bottle of soda, [left] the restaurant, and [stood] with [Appellant] in the alley, out of sight of the camera. After Wiggins [got] his food, he and Denmark [left] the restaurant and walk[ed] down the street. Defendant Banks follow[ed] closely behind Wiggins and Denmark while [Appellant] follow[ed] farther back. The defendants confront[ed] Wiggins and Denmark and Wiggins [fell] to the ground. Quickly thereafter[,] everyone [ran] away.

Police Officer Joanne Gain of the Crime Scene Unit recovered two .22 caliber fired cartridge casings, a Nike Air Jordan sneaker, and a Mountain Dew bottle from the murder scene. Officer Gain tested the Mountain Dew bottle for fingerprints and DNA. According to Police Officer John Cannon, an expert in firearms identification, these two .22 caliber fired cartridge casings were fired from the same unrecovered firearm. The bullet recovered from the decedent[']s body and the fired cartridge casings were not fired from the same firearm.

On April 14, 2008, at about 9:00 p.m., an unlicensed blue Lincoln town car was found on fire in the area of Tenth Street and Chew Avenue. Lieutenant Rodney Wright of the Philadelphia Fire Department determined that the vehicle was burned intentionally.

---

[1] Jamil Banks currently has an appeal with this same panel at 3579 EDA 2017.

On April 15, 2008, Charles Hayward gave a statement to police. Hayward explained that in February he had sold the blue Lincoln town car that Hill had called in to 9–1–1 to Bernard Salmond, [Appellant's] brother. According to Hayward, about a week previously, Wiggins had robbed [Appellant] after they had been gambling.

On April 17, 2008, Richard Hack, a friend of Wiggins, gave a statement to police. Hack explained that two days before the murder, [Appellant], Wiggins, and himself were gambling. [Appellant] and Wiggins argued about a gambling debt and then Wiggins choked [Appellant] and took $1000[.00] from him. For the next couple of nights, [Appellant] and his friends were in the area looking for Wiggins.

On January 13, 2010, Robert Bluefort told police that about three weeks after the murder, [Appellant] confessed to him that he shot Wiggins. According to [Appellant,] he had to shoot or be shot. Bernard Salmond told Bluefort that the police had questioned Hayward because the car that was used in the murder was in his name. Bluefort and Bernard Salmond then discussed burning the vehicle. Bernard Salmond stayed with Bluefort for about a month after the murder.

The Commonwealth charged Appellant with homicide, conspiracy to commit murder, person not to possess a firearm, carrying an unlicensed firearm, carrying a firearm in public in Philadelphia, possession of an instrument of crime ("PIC"), arson, and hindering apprehension. The latter two charges were dismissed after a preliminary hearing. The court severed Appellant's trial from that of his brother, but Appellant proceeded to trial with co-defendant Banks. The jury found Appellant guilty of third-degree murder and conspiracy.[2] It acquitted him of carrying an unlicensed firearm and PIC. The court sentenced Appellant on July 28, 2014, to twenty to forty years['] incarceration for the third-degree murder count and a consecutive term of five to ten years imprisonment for the conspiracy charge.

---

[2] 18 Pa.C.S.A. 2502(c) and 903, respectively.

*Commonwealth v. Salmond*, 2015 WL 6663272, at *1–2 (Pa. Super. 2015) (unpublished memorandum) (citation omitted). We affirmed Appellant's judgment of sentence in an unpublished memorandum on October 20, 2015. Appellant filed a timely PCRA petition on July 5, 2016. The PCRA court appointed counsel who filed an amended PCRA petition on June 29, 2017. On February 20, 2018, the PCRA court held an evidentiary hearing. The PCRA court entered an order on that same date denying Appellant relief. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

1. Whether the PCRA [c]ourt erred in denying [A]ppellant's claim that trial counsel was ineffective for failing to request an instruction for the jury to evaluate the testimony of Robert Bluefort, or, in the alternative, for failing to object to a deficient instruction for the same?

2. Whether the PCRA [c]ourt erred in denying an evidentiary hearing about counsel's failure to call witness Jalik Peay?

Appellants' Brief at 4.

In his first issue presented, Appellant claims that the PCRA court erred by denying his claim that trial counsel was ineffective for failing to request jury instructions, or failing to object to the jury instructions given, regarding Robert Bluefort's trial testimony. *Id.* at 7-13. Appellant avers that Bluefort was an accomplice and, thus, Appellant was entitled to a corrupt and polluted source jury instruction. *Id.* at 7-9. Appellant also argues that he "was entitled

---

[3] Appellant filed a notice of appeal on March 12, 2018. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 28, 2018.

to have the jury instructed that it should receive [] Bluefort's testimony with caution because he is cooperating with the [f]ederal government." *Id.* at 10. Appellant claims that he is entitled to relief because, "[a]t the evidentiary hearing, trial counsel freely admitted that she should have requested a cooperating witness instruction." *Id.* at 12. Finally, Appellant claims that trial counsel was ineffective for failing to object to the jury instruction given by the trial court pertaining to witnesses with *crimen falsi* criminal records. *Id.* at 13. Appellant claims that the trial counsel should have objected to the general jury charge given because the trial court did not specifically name Bluefort, or his prior *crimen falsi* crimes, in its instruction. *Id.* As such, Appellant contends "the jury was left to question who specifically the [trial c]ourt was referring to with [respect to a non-specific *crimen falsi* charge given]." *Id.*

Our standard of review is well-settled:

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. To overcome that presumption, the petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. If the petitioner fails to prove any of these prongs, the claim is subject to dismissal.

Relating to the reasonable basis prong, generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. Courts should not deem counsel's strategy or tactic unreasonable unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

To demonstrate prejudice in an ineffective assistance of counsel claim, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Commonwealth v. Durrett King*, 2018 WL 4102591, at *2 (Pa. Super. August 29, 2018) (internal citations, quotations, and brackets omitted).

Our Supreme Court recently concluded:

[A corrupt and polluted source] instruction is required when an accomplice's testimony implicates the defendant; the instruction informs the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution. This instruction is necessary if the trial evidence is sufficient to present an inference that a Commonwealth witness was an accomplice.

*Commonwealth v. Wholaver*, 177 A.3d 136, 165 (Pa. 2018) (internal citations and quotations omitted).

However, such an instruction "is warranted only in cases in which there is sufficient evidence to present a jury question with respect to whether the witness is an accomplice." *Commonwealth v. Collins*, 957 A.2d 237, 262 (Pa. 2008). "One merely present at the crime scene is not an accomplice ... nor is [an accomplice] one who merely helps an offender try to escape arrest or punishment[.]" *Id.* at 263.

In this case, the PCRA court noted that Bluefort "admitted that he was involved with the arson of the Lincoln Town [c]ar[,]" but "[t]he arson charge against [Appellant] was dismissed[.]" PCRA Court Opinion, 3/28/2018, at 9 and n.4. Upon our review of the record and the evidence presented at trial, Bluefort was not involved with, or an accomplice to, the crimes for which Appellant was found guilty. As such, there is no merit to Appellant's claim that counsel was ineffective for failing to request a corrupt and polluted source instruction.

Moreover, the jury heard testimony from Bluefort that after he was arrested and indicted for unrelated crimes, he provided information to federal authorities regarding the murder in this case, and was placed on house arrest as a result. N.T., 3/10/2014, at 10-13. Bluefort testified that he ultimately did not receive favorable treatment because he violated the terms of his house arrest and was imprisoned for five years. *Id.* at 15. As a result, when Bluefort testified about his initial police statement at trial in this matter, he did not "recall [anything] from the situation." *Id.* at 29. However, on cross-examination, the following exchange between Bluefort and defense counsel occurred:

> Q. While you were sitting in the Federal Detention Center, contemplating what was going to happen to you in federal court, did it occur to you that it might be good to tell a story about something because that's basically your get out of jail free card, right?
>
> A. Yes.

Q. It doesn't matter if it's true or not; you got to say what they want you to say because then you get something called a 5K1?

A. Yes.

Q. You and I know what that is, but the jury may not. What's that?

A. A sentence reduction.

Q. It can be a big one, right?

A. Yes.

Q. Depending on the kind of information you give; is that correct?

A. That's correct.

Q. The bigger the crime you talk about, the bigger the sentence reduction, right?

A. Yes.

Q. You give something big, you get something big, right?

A. That's correct.

Q. Your lawyer, Fred Perri, told you that, right?

A. Yes, he did.

Q. So if you know anything about anything or whether you hear anything about anything, even if it's not true, just say it because that's how you get out of jail, right?

A. You know certain information, you divulge it, yeah.

*Id.* at 38-39.

Moreover, in closing, defense counsel argued:

[...] Bluefort gets a deal [] and then testifies on the stand, whether or not he is either lying now, he wasn't lying, he doesn't remember and now the Commonwealth is going to vouch for this fraudulent kite scammer. This is a guy who has been scamming people since

at least 2000, as he said, with his prior record, and now he's scamming the [g]overnment by giving this information and now he is using him to scam you[, the jury].

N.T., 3/11/2014, at 146.

At the end of trial, the trial court instructed the jury as follows:

You must consider and weigh the testimony of each witness in this case and give it such weight as in your judgment it is fairly entitled to receive. The matter of the credibility of a witness, that is, whether a witness' testimony is believable and accurate in whole or in part is solely for your determination.

I'm now going to mention some of the factors which might bear on that determination. **Whether the witness has any interest in the outcome of the case**. Or has friendship or animosity toward other persons concerned in the case. The behavior of the witness on the witness stand. A witness' demeanor, a witness' manner of testifying and **whether she or he shows any bias or prejudice which might color the testimony**. The accuracy of a witness' memory and recollection. A witness' ability and opportunity to acquire knowledge of or to observe the matters concerning which they testify. The consistency or inconsistency of a witness' testimony, as well as its reasonableness or unreasonableness in light of all of the evidence in this case.

N.T., 3/11/2014, at 193-194 (emphasis added).

Initially, we note that Bluefort testified that he did not receive any benefit from testifying against Appellant, because his deal with federal authorities fell through when he was arrested on new charges while on house arrest. Here, the jury heard testimony regarding Bluefort's dealings with federal authorities and his past criminal actions. Defense counsel argued, in closing, that Bluefort was a "fraudulent [] scammer." Thereafter, the trial court instructed the jury to make credibility determinations and consider whether any witness had an interest in the outcome of the case. "The jury is

presumed to have followed the court's instructions." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1147 (Pa. 2011). Furthermore, "[w]e have held that a trial court may properly refuse to grant a defendant's point for charge, which posits that police officers and informants have an interest in the outcome of the case, where the court provides a general instruction that the jury must consider in its deliberations the potential bias or interest with which any witness may have testified." ***Commonwealth v. Slyman***, 483 A.2d 519, 529 (Pa. Super. 1984) (citation omitted). Appellant fails to show he was prejudiced. As such, Appellant's argument pertaining to the corrupt and polluted source jury charge is without merit.

Moreover, with regard to the portion of Appellant's jury instruction claim related to *crimen falsi* crimes, there is no dispute that the trial court gave a general charge, stating:

> Now, you heard evidence in this case that one of the witnesses has been convicted of another crime. The purpose for which you may consider this evidence of a prior conviction is in deciding whether or not to believe that witness' testimony. In doing so, you may consider the type of crime that was committed, how long ago it was committed and how it may affect the likelihood that the witness testified truthfully in this case.

N.T., 3/11/2014, at 199. Again, the jury is presumed to have followed the jury's instructions. Furthermore, Appellant does not challenge the legal substance of the jury instruction. Instead, he claims that the trial court failed to name Bluefort, and/or the *crimen falsi* crimes he committed, within the charge given. "A trial court has wide discretion in phrasing its jury

- 10 -

instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law." ***Commonwealth v. Jones***, 954 A.2d 1194, 1198 (Pa. Super. 2008) (citation omitted). As the trial court accurately stated the law in the above quoted instruction, it did not abuse its discretion in denying Appellant's request for a more specific language, and Appellant's claim pertaining to the *crimen falsi* charge lacks merit. For all of the foregoing reasons, Appellant's first issue fails.

In his second issue presented, Appellant claims that trial counsel was ineffective for failing to call Jalik Peay to testify at trial. Appellant's Brief at 13-16. Appellant claims that Peay knew the victim regularly carried a gun and that Peay found, and removed, an ammunition clip on the murder scene near the victim's foot. ***Id.*** at 14-15. Appellant also avers that a woman named "Leak Leak" "told Mr. Peay that the deceased had robbed someone, and that person came back and shot the deceased." ***Id.*** at 15. Appellant claims the PCRA court erred when it refused to consider Peay's testimony because he failed to attach a witness affidavit to his PCRA petition, and instead, affixed Peay's statement given to police after the murder. ***Id.***

Initially, we note that Appellant has failed to support this argument with citation to authority regarding ineffective assistance of counsel claims

- 11 -

pertaining to the failure to call a witness.[4]   Regardless, our Supreme Court

has determined:

> To be entitled to relief on a claim of ineffectiveness for failure to call a witness, an appellant must demonstrate that: the witness existed, was available, and willing to cooperate; counsel knew or should have known of the witness; and the absence of the witness's testimony prejudiced the appellant. A PCRA petitioner cannot succeed on such a claim if the proposed witness' testimony would not have materially aided him. In such a case, the underlying-merit and prejudice prongs of the ineffective assistance of counsel test logically overlap.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1284 (Pa. 2016) (internal

citations, quotations, and brackets omitted).

---

[4]   "We have repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review." *Commonwealth v. Plante*, 914 A.2d 916, 924 (Pa. Super. 2006).   In his appellate brief, Appellant solely cites *Commonwealth v. Ramos*, 174 A.3d 100 (Pa. Super. 2017), an unpublished memorandum decision from this Court arguing "[t]he PCRA court did not take into consideration precedent finding that it is *per se* unreasonable to not investigate a known witness."   However, unpublished memoranda are not binding precedent.   *See* 210 Pa. Code § 65.37; *see also Schaaf v. Kaufman*, 850 A.2d 655 (Pa. Super. 2004) (discussing section 65.37 and corresponding limitations on use of unpublished memorandum decisions).   Moreover, upon further review, Appellant did not raise a *per se* ineffective assistance of counsel claim in his PCRA petition or amended PCRA petition and he cannot do so for the first time on appeal.   *See* Pa.R.A.P. 302(a).   Finally, we note that *per se* ineffective assistance of counsel claims are highly limited to "the actual or constructive denial of counsel [where] prejudice may be so plain that the cost of litigating the issue of prejudice is unjustified."   *Commonwealth v. Rosado*, 150 A.3d 425, 429, (Pa. 2016), *citing* *U.S. v. Cronic*, 466 U.S. 648, 658-659 (1984). "Ineffectiveness *per se* may also be shown, *inter alia*, where (1) the state interferes with the assistance of counsel; (2) counsel fails to subject the prosecution's case to meaningful adversarial testing; or (3) counsel's representation is affected by his or her representation of adverse interests." *Rosado*, 150 A.3d at 430 n.7.   None of these limited circumstances are implicated herein.

We discern no abuse of discretion or error of law in denying Appellant's current claim. There is simply no evidence that Peay would have testified for Appellant. Appellant failed to show that Peay was willing to cooperate as a witness for him. Moreover, despite giving a statement to police, Appellant has failed to show that Peay would have testified consistently with that statement. Furthermore, as the PCRA court noted "Leak Leak's" supposed statements, as set forth above, constituted hearsay and would not have been admissible. PCRA Court Opinion, 3/28/2018, at 6. Finally, we note that the proffered testimony was actually consistent with the evidence presented at trial. Appellant claims that Peay would have offered evidence that the deceased had robbed someone, and that person came back and shot the deceased. At trial, the Commonwealth presented evidence that the victim robbed Appellant while gambling and that Appellant retaliated. Hence, the jury heard most of the facts to which the proffered witness would have testified. As such, Appellant has failed to prove that Peay's testimony would have materially aided him. Accordingly, Appellant's appellate second issue fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/19