487 A.2d 1353

COMMONWEALTH of Pennsylvania

v.

Jeffrey S. REMP, Appellant.

Superior Court of Pennsylvania.

Submitted March 19, 1984.

Filed Jan. 30, 1985.

Petition for Allowance of Appeal Granted Aug. 2, 1985.

424

Charles D. Younger, Assistant Public Defender, Reading, for appellant.

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for Commonwealth, appellee.

Before SPAETH, President Judge, and ROWLEY and BECK, JJ.

SPAETH, President Judge:

■ This is an appeal from judgment of sentence to life imprisonment for first degree murder. When the case was called for trial, defense counsel requested a continuance on the ground that a psychiatrist appointed by the court to evaluate appellant had not yet done so. The trial court denied the request. Appellant argues that this was reversible error. We agree and therefore vacate the judgment of sentence and reverse and remand for a new trial.[1]

On May 23, 1981, appellant was arrested and charged with criminal homicide, murder, and aggravated assault for stabbing a man in a bar in Shillington, Berks County. He pleaded not guilty at his arraignment, and on August 10, 1981, he was evaluated by Dr. Larry Rotenberg, a psychiatrist. N.T. 6. On August 12, 1981, appellant filed an application with the trial court for leave to employ a psychiatrist and/or psychologist. The Commonwealth answered, stating that it had no objection to the application, and on September 2, 1981, the trial court entered an order appointing Dr. Rotenberg to evaluate appellant's mental condition and to aid defense counsel in the preparation of appellant's case.

On September 11, 1981, a Friday, defense counsel learned that appellant's case would be called for trial on Monday, September 14, 1981. N.T. 8, 17–18. Although counsel had been informed at appellant's arraignment, on July 31, 1981, that the trial was scheduled to begin on September 14, he believed that because of the outstanding order appointing Dr. Rotenberg, the case would not be called for trial in

---

1. Appellant assigns numerous other rulings of the trial court as reversible error, but we need not consider these. Appellant also argues that he is entitled to discharge because the verdict was contrary to the law, to the evidence and to the weight of the evidence, and that the evidence was insufficient to sustain the verdict. The trial court correctly found these arguments without merit. Slip op. of trial court at 4–7.

September. N.T. 13, 15–16. Counsel had communicated this belief to the District Attorney and had corresponded with him as late as September 9. N.T. 8. However, the District Attorney did not tell counsel that the trial would indeed commence on September 14, until September 11.

Immediately before the trial began, the following colloquy occurred:

MR. MOYER [defense counsel] ... Your Honor, I'd like to begin by objecting to this trial since I feel that there is an outstanding order, dated September 2, signed by you, in regard to an evaluation, psychiatric evaluation of the defendant by Dr. Larry Rotenberg. Further, at this time—

THE COURT: On that point, let's deal with that, first of all. The file would indicate that you, on behalf of your client, on August 11th, 1981,—strike that, August 12, 1981, at 2:10 p.m., made application for leave to employ a psychiatrist and/or a psychologist.

MR. MOYER: Yes, Your Honor.

THE COURT: In that petition you asked that the Court permit you, on behalf of your client, to retain either a psychiatrist or psychologist to aid you in the preparation for a suppression hearing and trial, particularly to apprise counsel about defendant's ability to understand his rights and to evaluate his intellectual level and determine his understanding of the crimes charged; is that correct?

MR. MOYER: Yes, sir.

THE COURT: The District Attorney then filed an Answer in which it [sic] had no objection to that, but I then appointed Dr. Larry Rotenberg of the Reading Hospital.

MR. MOYER: Your Honor,—

THE COURT: Let me finish. I understand that Dr. Rotenberg did an evaluation of your client even before I appointed him.

MR. MOYER: Yes, sir.

THE COURT: All right. And so that I appointed Dr. Rotenberg by order dated September 2, 1981. Is that correct:

MR. MOYER: Yes, sir.

THE COURT: Now, is there any reason why then Dr. Rotenberg has not—is not in a position to assist you, having evaluated your client even prior to his appointment?

MR. MOYER: Your Honor, in regard to the application, the County of Berks was also made a party to that application and it was served upon them. I filed this before Judge Schaeffer and Judge Schaeffer felt that the County should have some discretion to whether their funds would be spent. There was no answer from them.

THE COURT: Well, they didn't answer by the return date, did they?

MR. MOYER: No, sir.

THE COURT: All right.

MR. MOYER: On August 10, 1981, Your Honor, defendant was seen by Dr. Rotenberg. I had talked to Dr. Rotenberg at that time and I had talked to the defendant and I felt that there were additional, there were some things that bothered me about the defendant, his inability to remember and recall events, that led to my applying for a psychiatric evaluation.

THE COURT: Well, but has Dr. Rotenberg requested additional time to make any reevaluations or anything of that nature?

MR. MOYER: Your Honor, he hasn't requested additional time because I thought he was just—in fact, Your Honor, you order states that the evaluation I received from him was an informal evaluation—no, excuse me. When I talked to you about this order, you stated to me that the evaluation I had was an informal evaluation and you were going to order a formal evaluation by Dr. Rotenberg.

THE COURT: I didn't say that; you misunderstood me, if I did; I don't think I did. What I said is you had him do informally in that he was not appointed by the Court. [*sic*].

MR. MOYER: Yes, sir.

THE COURT: I felt that having filed the petition as you did, that certainly the Court ought to then follow through with that and not have that outstanding, and I therefore, after consultation with you and also Dr. Rotenberg, appointed him. When I talked to Dr. Rotenberg on the telephone, he indicated to me that he had already evaluated your client and he would be happy to accept the appointment. Now, unless he is presently telling me, through you, that he needs additional time for further or reevaluations, I don't see any merit to your request for continuance on that basis.

MR. MOYER: Well, Your Honor, I have not talked to Dr. Rotenberg because I have received nothing from him since the evaluation which he did in August.

THE COURT: Well, I appointed him September 2, 1981. It's September 14, 1981 now. Have you called him?

MR. MOYER: No, sir. I wasn't aware that this was a problem until September 11, Your Honor.

THE COURT: All right. Anything further on that point?

MR. MOYER: No, sir.

THE COURT: So you are requesting that the matter be continued because of the possibility that Dr. Rotenberg might want to reevaluate?

MR. MOYER: Yes, sir.

THE COURT: But you are not in a position to know at this time?

MR. MOYER: No, sir. I am not. I would like an opportunity to talk to Dr. Rotenberg and to seek his advice. If there is not a question of competency or criminal responsibility, I would like to find out what sort of medication the defendant was taking, since he was on medication at that time.

THE COURT: All right.

N.T. 4–8.

When asked his position on the motion, the assistant district attorney responded by reiterating what had already been expressed by the court:

THE COURT: Initially, I'd like to know what your position is with respect to his request for a continuance based on the order of the court appointing Dr. Rotenberg to assist defense counsel in preparation of his trial.

MR. BUCCI: [assistant district attorney] I don't think that is a valid reason for a continuance since the defense has had ample opportunity to confer with Dr. Rotenberg prior to today and there is nothing on the record that Dr. Rotenberg needs any further time to investigate the case. N.T. 10.

After further colloquy, on other matters, the court denied defense counsel's request for a continuance. In its opinion the court gives the following reasons for the denial:

The court's order of September 2 merely formalized the appointment of the psychiatrist already employed by defendant. Although defendant was not satisfied with the results of the psychiatrist's initial evaluation he made no effort to contact the psychiatrist after September 2. Defense counsel mistakenly interpreted the order as requiring a formal evaluation by the psychiatrist. By September 11, 1981, defense counsel was aware that no further evaluation had taken place (N.T. at 7) but did not then avail himself of the opportunity to file a timely motion for a continuance. Upon the untimely motion, defendant could not demonstrate the need for any further evaluation but only the speculation that the psychiatrist might want additional time to reevaluate.

Slip op. of trial court at 9 (footnote omitted).

■ We may begin our examination of the trial court's denial of defense counsel's request for a continuance by noting the scope of our review. A court may, in the interests of justice, grant a continuance, either on its own motion or on the motion of a party. Pa.R.Crim.P. 301(a). Although a motion for a continuance on behalf of the defendant should ordinarily be made 48 hours before the time set for trial, a later motion may be granted when the interests of justice require it. Pa.R.Crim.P. 302(b). The decision whether to grant a later motion is a matter within

the court's discretion. *Commonwealth v. Fisher*, 247 Pa. Super. 187, 372 A.2d 1 (1977). The issue we must decide, therefore, is whether the trial court, in refusing defense counsel's motion for a continuance, abused its discretion.

■ As we have mentioned, appellant was charged with first degree murder, a crime requiring willful, deliberate and premeditated killing. 18 Pa.C.S. § 2502. Appellant had a history of mental illness, N.T. 386–420, and defense counsel had filed a notice of insanity defense, pleading appellant's inability to commit a willful, deliberate and premeditated killing. Also, appellant had been drinking heavily on the night of the stabbing so that the issue was presented whether his intoxication, together with his impaired mental condition, would warrant reduction of the killing from first degree murder to a lower degree of murder. *See*, 18 Pa.C.S. § 308. Indeed, the only substantial issue was appellant's mental condition, for as the record discloses,[2] there was little if any question that appellant had committed the killing. It was therefore entirely appropriate for the Commonwealth not to oppose, and for the trial court by its order of September 2 to grant, defense counsel's petition for the appointment of a psychiatrist to evaluate appellant's mental condition and to aid defense counsel in the preparation of appellant's case.

We have encountered some difficulty in our consideration of the trial court's statements in its opinion that its "order of September 2 merely formalized the appointment of the psychiatrist already employed by defendant", and that "[d]efense counsel mistakenly interpreted the order as requiring a formal evaluation by the psychiatrist." Initially, we note that the record does not disclose whether when Dr. Rotenberg saw appellant on August 10 it was pursuant to having been "employed by [appellant]." But whatever may be the fact as to that, the order of September 2 is unequivocal: it appointed Dr. Rotenberg to evaluate appellant's mental condition, and we find no support in the record for

2. *See* footnote 1, *supra,* and the trial court's discussion of the sufficiency of the evidence.

the trial court's statement that "defense counsel mistakenly interpreted the order as requiring a formal evaluation." To the contrary, the record is persuasive that counsel's interpretation was the natural and logical interpretation of the order. Specifically, the record discloses the following facts: Dr. Rotenberg had performed some sort of evaluation of appellant. The extent of the evaluation is not disclosed by the record, but in its opinion the trial court characterizes the evaluation as an "initial evaluation," slip op. at 9, and this is borne out by counsel's representation, which was uncontradicted, and which the court accepts in its opinion, *id.*, that the evaluation left counsel with unanswered questions and that it was in an effort to resolve these that counsel petitioned for the appointment of a psychiatrist. Given this background, the natural and logical interpretation of the order granting the petition could only be that the psychiatrist appointed by the court *would further evaluate* appellant, and, in order to assist appellant's counsel in resolving the questions left unanswered by the initial evaluation, *would submit* to counsel a report of his evaluation. Indeed, at one point in the colloquy the trial court seems to have acknowledged as much, for the court said that [defense counsel] having filed the petition" ..., certainly the Court [felt that it] ought to then follow through and not have that outstanding...." N.T. 6. And yet, when the case was called for trial, the order entered on the petition *was* outstanding: despite his appointment by the court, Dr. Rotenberg had not further evaluated appellant, and, consequently, had not and could not have submitted to counsel a report of that evaluation so that counsel could use it in preparing appellant's case.

As we have already noted, in quoting the trial court's opinion, *supra*, the court in explaining its decision to require counsel to proceed with the trial despite its outstanding order and Dr. Rotenberg's not having made a further evaluation of appellant, states that by September 11 counsel knew that Dr. Rotenberg had not made the further evaluation directed by the court's order of September 2, "but did

not then avail himself of the opportunity to file a timely motion for a continuance." Slip op. at 9. "Upon the untimely motion [filed September 14, when the case was called for trial]," the court continues, "defendant could not demonstrate the need for any further evaluation but only the speculation that the psychiatrist might want additional time to re-evaluate." *Id.* These statements may be conveniently considered in reverse order.

The question was not what "the psychiatrist [Dr. Rotenberg] might *want* " (emphasis added). He had, on appellant's petition, unopposed by the Commonwealth, and granted by the court, been *ordered* to make a further evaluation. Moreover, the order was unequivocal; there was no room for any "speculation."

As regards the court's criticism of defense counsel: Counsel did indeed acknowledge to the court that on September 11 he knew that Dr. Rotenberg had not made the further evaluation of appellant that the court had ordered, and that knowing that, he had not filed a motion for continuance. In considering whether, and how severely, counsel should be chastised, several facts seem to us deserving of attention.

The order directing Dr. Rotenberg to make the further evaluation, having been entered on September 2, was only nine days old on September 11. Included in that nine day period was the three day Labor Day weekend. The doctor had therefore had only six days within which to make the further evaluation. No doubt court orders should be promptly obeyed. We do not believe, however, that the doctor could fairly be criticized for not having made the further evaluation within six days, which is to say, counsel was entitled to assume that it would take the doctor somewhat more than six days to arrange for and conduct a further evaluation, and to prepare and submit his formal report. We therefore find nothing surprising or in the least suggestive of inattention in the fact that on September 11 counsel knew that the further evaluation had not been conducted.

■ No doubt counsel might, and probably he should, have moved for a continuance on September 11. However, it must be remembered that counsel believed that the case would not be called to trial in September; counsel may have been too trusting, but he was not unreasonable. To the contrary, as we have discussed, the natural and logical interpretation of the court's order of September 2 was that Dr. Rotenberg would further evaluate appellant and would submit a report of his evaluation. Given that the order was entered on September 2 and had not been complied with, it was entirely reasonable of counsel to believe that the trial would not proceed on September 14—a date set several weeks before Dr. Rotenberg's appointment. Moreover, counsel had communicated his belief to the District Attorney, and it was not until September 11 that he learned that despite the outstanding order of September 2, the case would be called for trial on September 14. While it is true that a motion for continuance filed that very afternoon would have been timely, we do not believe that counsel should be condemned as dilatory for not acting that promptly. September 11 was a Friday. The difference between a motion for continuance filed on Friday afternoon and one filed on Monday morning seems to us quite problematical: One motion is "timely," the other is not; but as a practical matter, what is the difference?

Of course, in some circumstances there might as a practical matter be a difference. Situations may be imagined, as for example, where arrangements have been made for the attendance of an expert witness, in which it might be important to counsel for one party to know on Friday afternoon that opposing counsel would represent to the court on Monday morning that he was unprepared to proceed to trial because a court order was still outstanding. But nothing in the record before us suggests that this was the case.

In these circumstances we believe the trial court should have asked the prosecutor and defense counsel whether an arrangement might not be worked out that would enable

the trial to proceed promptly while still ensuring compliance with the court's outstanding order of September 2. Such an inquiry might have disclosed, for example, that Dr. Rotenberg would have been able to conduct the further evaluation of appellant's mental condition, and submit his report, that same day, or the next. However, the court made no such inquiry.

One further aspect of this case requires discussion, and that is that the procedures that the General Assembly contemplated would be followed in a case such as this case were not followed.

The Mental Health Procedures Act, 50 P.S. § 7101 *et seq.*, provides that "[a]pplication to the court for an incompetency examination may be presented by ... a person charged with a crime, [or his] counsel ..." 50 P.S. § 7402(e), and that "[t]he court, either on application or on its own motion, may order an incompetency examination at any stage in the proceedings ..." 50 P.S. § 7402(d). When an incompetency examination is ordered by the court, the defendant is entitled to have counsel present, 50 P.S. § 7402(e)(3), and the evaluator must submit a report to the court and counsel, 50 P.S. § 7402(e)(4). The report must contain the diagnosis of the defendant's mental condition; an opinion as to the defendant's competency to stand trial; when requested, an opinion as to the defendant's mental condition in relation to the standards of criminal responsibility; and also when requested, an opinion as to whether the defendant had the capacity to have a particular state of mind required by the crime charged. 50 P.S. § 7402(e)(4)(i)–(iv). If the defendant has substantial objection to the conclusions of the court-appointed evaluator, and cannot afford to retain his own expert, the court must by providing for reasonable compensation enable him to retain his own expert. 50 P.S. § 7402(f).

Here, defense counsel did not follow the procedures as closely as would the careful practitioner. In his petition for the appointment of a psychiatrist and/or psychologist, he failed to cite § 7402, and rather than requesting the court

to order an incompetency examination, he requested an evaluation of appellant's mental condition for his use in preparing appellant's defense. However, the Commonwealth raised no objection to the form of the petition, and the court granted the petition. Had the court required Dr. Rotenberg to comply with its order of September 2, and conduct his further evaluation of appellant's mental condition and submit his report to the court and counsel, then the matter could have proceeded as contemplated by the General Assembly: Counsel would have known Dr. Rotenberg's diagnosis and opinions regarding appellant's competency, criminal responsibility, and capacity to form the intent requisite to first degree murder, and, depending upon what these were, could have petitioned for the appointment of another psychiatrist of his own selection. In the event, however, counsel was compelled to proceed to trial without Dr. Rotenberg's report, with the possibility of petitioning for the appointment of another psychiatrist foreclosed.

■ After considering all of these different aspects of the case, and after balancing one against the other, we find the conclusion inescapable that in denying defense counsel's request for a continuance, the trial court acted with inappropriate severity and undue haste, and thereby abused its discretion. While our reasoning is implicit in what has been said so far, it may be helpful by way of summary to recapitulate it.

First: Counsel requesting the continuance had in no sense been dilatory; the prosecution had in no sense been delayed; and nothing in the record suggests that a continuance would in any way have hampered the prosecution. Rather, counsel requested the continuance within three days of learning that the trial would begin on September 14; the prosecution was proceeding with great dispatch, appellant's arraignment having occurred barely more than a month ago; and in opposing the continuance the district attorney did no more than reiterate the concerns expressed by the trial court, which we have rejected as not supported by the record.

Second: The basis of the request for a continuance was that the court's own order, directing a further evaluation of appellant's mental condition, was outstanding. Moreover, the doctor directed by the order to conduct the further evaluation had had very little time to comply with the order (only twelve days, including two weekends, one of them the Labor Day weekend). And yet, the court failed to require compliance with its order, and denied counsel's request for a continuance without considering possible alternative courses of action.

Third: The charge was of the utmost gravity—first degree murder—and the only substantial issue was appellant's mental condition. The interests of justice therefore required that the trial court exercise particular care to ensure that the issue of appellant's mental condition was fully explored and fairly presented to the jury. We cannot say that that occurred.

The judgment of sentence is reversed and the case remanded for new trial. Jurisdiction is relinquished.

ROWLEY, J., files a dissenting opinion.

ROWLEY, Judge, dissenting:

Since I am unable, based upon my review of the record in this case, to characterize the trial court's order denying appellant's request for a continuance of his trial as an abuse of discretion, I respectfully dissent.

The grant or refusal of a request for continuance is a matter vested in the sound discretion of the trial court and its decision, to grant or deny the request, will not be reversed by an appellate court in the absence of an abuse of that authority. *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968). *See also Commonwealth v. Slyman*, 334 Pa.Super. 415, 483 A.2d 519 (1984) [Trial court did not abuse discretion in denying defendant's request for continuance presented four days prior to trial for purpose of obtaining a named technical treatise for use at defendant's trial on drug charges (pp. 32–34 Slip Op.)]. In *Com-*

*monwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976), the Supreme Court, in affirming the defendant's first degree murder conviction and life sentence, held that the trial court had not abused its discretion in denying the defendant's motion for a continuance for the purpose of having an investigator appointed and to secure a material witness. The Court noted that an appellate court, in reviewing such a ruling, should consider the nature of the crime and its surrounding circumstances in deciding whether the denial of the requested continuance was an abuse of the trial court's discretion. The criteria established by the Court to determine whether the trial court's discretion was properly exercised are: (1) the necessity of the missing witness to strengthen the defendant's case; (2) the essentiality of the witness to defendant's defense; (3) the diligence exercised to procure his presence at trial; (4) the facts to which he could testify; and (5) the likelihood that he could be produced at the next term of court. Applying these criteria to the record in this case, I conclude that the order entered by the trial court was fully justified and constituted an appropriate exercise of the discretion vested in the trial judge.

When appellant's motion for a continuance was presented on the day set for trial, no information was provided to the trial judge to show that Dr. Rotenberg was either necessary or essential to the defendant's case. Although an initial evaluation of appellant had been made by Dr. Rotenberg, no report, oral or written, of the evaluation was given by his counsel to the trial court for its consideration in passing on the motion. Appellant's counsel conceded that he was requesting the continuance because of a *"possibility"* that the doctor *"might"* desire to reevaluate appellant and because counsel would like "to seek" the doctor's advice. There was absolutely no information provided to the trial court as to what the doctor's testimony *might* have been. The reasons given for the late request amount to pure speculation.

Furthermore, it does not appear that counsel, after the appointment of the doctor by the court, had ever contacted

the doctor for the purpose of scheduling a reevaluation or determining whether one would be useful or valuable. It does not even appear that, after the appointment, he attempted to contact the doctor prior to appearing before the court at 11:41 a.m. on Monday morning to commence selection of the jury. The trial court, after considering the motion, recessed court until after 1:30 p.m. that day, and it does not appear that any effort was made to substantiate appellant's "hope" or "expectation" that further evaluation or consultation with the doctor would assist in appellant's defense. Finally, although we do not have any information regarding the doctor's initial evaluation, it is noteworthy that in response to appellant's notice of an insanity defense the Commonwealth, as was its right, listed Dr. Rotenberg as a rebuttal witness. The evidence of record in this case, then, is totally devoid of the remotest suggestion that appellant was (1) incompetent to stand trial or (2) "insane" at the time of the commission of the homicide. In addition, there is no indication of any evidence available to support such claims. Thus, appellant has failed to meet his burden of showing that Dr. Rotenberg was, or even might be, necessary or essential to his defense.

Additionally, I do not view appellant's counsel's efforts at obtaining such evidence or information as having been diligent. On the contrary, I do not view it to be the responsibility of the trial judge or the prosecutor, after the order of appointment was signed, to contact the doctor and make arrangements for any further evaluation. That was the responsibility of appellant's counsel. Nor do I agree that counsel should have been mislead by the court's order or that he *"reasonably* relied" on the order as effecting a continuance of the trial date previously scheduled. Furthermore, it appears that, even during trial and subsequent thereto, there has been no effort made to ascertain whether Dr. Rotenberg might "possibly" assist or benefit appellant's defense. It is also important to note that prior to trial counsel did not object to the appointment of Dr. Rotenberg

nor did he request the appointment of another or different doctor.

In addition to demonstrating appellant's failure to meet the burden of showing what Dr. Rotenberg's testimony might have been, or that his presence was necessary or essential to the defense, the record also discloses that the appellant *did* present at his trial the testimony of an expert witness. Although appellant did not present any evidence of insanity, he did present two defenses at his trial: (1) voluntary intoxication and (2) diminished capacity both to establish the lack of a specific intent required for first degree murder and to reduce the crime, if any, to third degree murder. Both of these defenses were presented for the jury's consideration by the trial judge in a charge to which no exception has been taken. The diminished capacity defense was based upon the testimony of Dr. Peter Howard Thomas, called by appellant. Dr. Thomas is a clinical psychologist and at the time of trial had an independent practice. Prior to that time, he had some consulting relationships with the local hospital and school district as well as with the county Children and Youth Services. He had been practicing psychology in Pennsylvania for eight years. Even more importantly, Dr. Thomas had worked with the appellant off and on for some seven years prior to the trial. Dr. Thomas had personal knowledge of appellant and his past experiences with mental health institutions. In fact, Dr. Thomas had seen appellant during the two week period prior to the commission of the homicide. Dr. Thomas diagnosed appellant's condition as a "borderline personality". In response to a hypothetical question from appellant's counsel, the doctor expressed an opinion "with great certainty" that appellant was highly vulnerable to acting out impulsively under stress accompanied by heavy drinking. The acting out would be impulsive, according to the doctor, and would be accompanied by a loss of control. The doctor further expressed the opinion, however, that he could *not* say "that there was no premeditation." On cross-examination, Dr. Thomas testified that appellant, in

his opinion, would know the difference between right and wrong at the time of the homicide. Thus, even appellant's own expert, who had treated him over a period of years and was familiar with his condition, not only flatly contradicted any suggestion of insanity but he also failed to support his claim of diminished capacity to any great degree.

As indicated by the majority, there is very little if any question that appellant in fact fatally stabbed the victim during a barroom assault. It is also true that the only recourse left to appellant was to defend against the charges on grounds of his mental capacity or incapacity. However, although appellant filed a notice of an insanity defense, he has not to this day presented one bit of evidence to support that claim. In fact, on the contrary, his own expert has refuted that claim. Additionally, the testimony by the witnesses who were present at the time of the stabbing and those who observed him later, including the officers who effected his arrest, overwhelmingly establishes his sanity on that evening. *See Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974), and *Commonwealth v. Zlatovich*, 440 Pa. 388, 269 A.2d 469 (1970).

My review of the record convinces me that the trial judge did not act hastily in denying appellant's request, but rather, that he gave it careful and deliberate consideration. Nor in my opinion did he act with undue severity. At the time scheduled for trial, he was presented with a request, after jurors, witnesses, counsel and staff were all collected, to continue the case. Counsel presented him with nothing of substance to support the request. Nor did counsel request a limited continuance or recess during the course of the trial that lasted for a week. Moreover, subsequent events such as the testimony by appellant's own expert and the failure to produce, even to this day, any substantiation of a claim of insanity or incapacity to stand trial bear out the fact that the trial court's decision was a sound one reached after an appropriate exercise of the discretion vested in him.

Having concluded that the trial court did not abuse its discretion, I have reviewed the remaining thirty allegations of error presented by appellant. Having concluded that they likewise have no merit, I would affirm the judgment of sentence.