507 A.2d 345

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Jeffrey S. REMP, Appellee.**

Supreme Court of Pennsylvania.

Submitted Dec. 5, 1985.

Decided March 27, 1986.

Charles M. Guthrie, Jr., Reading, for appellant.

Charles D. Younger, Reading, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented by this appeal is whether the trial court abused its discretion in denying appellee's pre-trial motion for a continuance. We hold that, under the circumstances of this case, the trial court's ruling did not constitute an abuse of discretion.

Appellee, Jeffrey S. Remp, was arrested on May 23, 1981 and charged with criminal homicide, murder and aggravated assault in connection with the stabbing death of a Berks County man. After an initial consultation with appellee, defense counsel went to the Berks County mental health facility and requested that a psychiatrist at the facility evaluate appellee. Pursuant to that request, on August 10, 1981, appellee was seen by one Dr. Larry Rotenberg who submitted a report to defense counsel. Subsequently, on August 12, 1981, seeking further evaluation, defense counsel filed in the Berks County Court of Common Pleas an application for leave to employ a psychiatrist and/or psychologist.[1] The Commonwealth's answer stated that it had no objection to appellee's application and, on September 2,

1. Defense counsel also filed on that date a Notice of Insanity Defense pursuant to Pa.R.Crim.P. 305 C(1)(b).

204

1981, the application was granted. Dr. Rotenberg was thereby appointed to evaluate appellee and to aid defense counsel in the preparation of appellee's defense.

On September 14, 1981, when the case was called for trial, defense counsel moved for a continuance on the ground that he wished to obtain an additional psychiatric examination of appellee before trial. A colloquy between the trial court and defense counsel then occurred, the essence of which was that defense counsel was unhappy with the conclusions drawn by Dr. Rotenberg as a result of Dr. Rotenberg's examination.[2] Defense counsel was groundlessly hoping that another examination might produce a different conclusion but, knowing that this was merely a whistle in the dark, had taken no steps to obtain another examination. The trial court informed defense counsel that it found defense counsel's reasons to be without merit and, after further colloquy, on other matters, the court denied defense counsel's request for a continuance.

At trial, appellee did not present an insanity defense but instead defended on the grounds of voluntary intoxication and diminished capacity. In this respect, appellee presented the testimony of one Dr. Peter Thomas, a clinical psychiatrist who had treated appellee off and on for some seven years prior to trial. At the conclusion of the week-long trial, appellee was found guilty by a jury of first degree murder and aggravated assault. Appellee's post-verdict motions were denied and appellee was sentenced to life imprisonment.

On appeal, the Superior Court reversed, 338 Pa.Super. 423, 487 A.2d 1353 (Rowley, J., dissenting) and remanded for a new trial, holding that the trial court had abused its discretion and had acted with inappropriate severity and undue haste in denying appellee's motion for a continuance. We granted the Commonwealth's petition for allowance of appeal and we now reverse.

2. The relevant portion of the colloquy is set forth in an Appendix, attached hereto.

 The Commonwealth contends that the trial court did not abuse its discretion in denying appellee's motion for continuance and that, therefore, the Superior Court erred in reversing the trial court's decision. After a thorough review of the record and the opinions of the courts below, we find that the excellent dissenting opinion of Judge James E. Rowley cogently analyzes this issue. Therefore, we adopt Judge Rowley's opinion, as follows:

"The grant or refusal of a request for continuance is a matter vested in the sound discretion of the trial court and its decision, to grant or deny the request, will not be reversed by an appellate court in the absence of an abuse of that authority. *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968). *See also Commonwealth v. Slyman*, 334 Pa.Super. 415, 483 A.2d 519 (1984) [Trial court did not abuse discretion in denying defendant's request for continuance presented four days prior to trial for purpose of obtaining a named technical treatise for use at defendant's trial on drug charges (334 Pa.Super. pp. 441–442, 483 A.2d 519) ]. In *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976), the Supreme Court, in affirming the defendant's first degree murder conviction and life sentence, held that the trial court had not abused its discretion in denying the defendant's motion for a continuance for the purpose of having an investigator appointed and to secure a material witness. The Court noted that an appellate court, in reviewing such a ruling, should consider the nature of the crime and its surrounding circumstances in deciding whether the denial of the requested continuance was an abuse of the trial court's discretion. The criteria established by the Court to determine whether the trial court's discretion was properly exercised are: (1) the necessity of the missing witness to strengthen the defendant's case; (2) the essentiality of the witness to defendant's defense; (3) the diligence exercised to procure his presence at trial; (4) the facts to which he could testify; and (5) the likelihood that he could be produced at the next term of court. Applying these criteria to the record in this case, I conclude

that the order entered by the trial court was fully justified and constituted an appropriate exercise of the discretion vested in the trial judge.

"When [appellee's] motion for a continuance was presented on the day set for trial, no information was provided to the trial judge to show that Dr. Rotenberg was either necessary or essential to [appellee's] case. Although an initial evaluation of [appellee] had been made by Dr. Rotenberg, no report, oral or written, of the evaluation was given by his counsel to the trial court for its consideration in passing on the motion. [Defense] counsel conceded that he was requesting the continuance because of a *'possibility'* that the doctor *'might'* desire to reevaluate [appellee] and because counsel would like 'to seek' the doctor's advice. There was absolutely no information provided to the trial court as to what the doctor's testimony *might* have been. The reasons given for the late request amount to pure speculation.

"Furthermore, it does not appear that counsel, after the appointment of the doctor by the court, had ever contacted the doctor for the purpose of scheduling a reevaluation or determining whether one would be useful or valuable. It does not even appear that, after the appointment, he attempted to contact the doctor prior to appearing before the court at 11:41 a.m. on Monday morning to commence selection of the jury. The trial court, after considering the motion, recessed court until after 1:30 p.m. that day, and it does not appear that any effort was made to substantiate [appellee's] 'hope' or 'expectation' that further evaluation or consultation with the doctor would assist in [appellee's] defense. Finally, although we do not have any information regarding the doctor's initial evaluation, it is noteworthy that in response to [appellee's] notice of an insanity defense the Commonwealth, as was its right, listed Dr. Rotenberg as a rebuttal witness. The evidence of record in this case, then, is totally devoid of the remotest suggestion that [appellee] was (1) incompetent to stand trial or (2) 'insane' at the time of the commission of the homicide. In addition,

there is no indication of any evidence available to support such claims. Thus, [appellee] has failed to meet his burden of showing that Dr. Rotenberg was, or even might be, necessary or essential to his defense.

"Additionally, I do not view [defense] counsel's efforts at obtaining such evidence or information as having been diligent. On the contrary, I do not view it to be the responsibility of the trial judge or the prosecutor, after the order of appointment was signed, to contact the doctor and make arrangements for any further evaluation. That was the responsibility of [defense] counsel. Nor do I agree that counsel should have been misled by the court's order or that he ' *reasonably* relied' on the order as effecting a continuance of the trial date previously scheduled. Furthermore, it appears that, even during trial and subsequent thereto, there has been no effort made to ascertain whether Dr. Rotenberg might "possibly" assist or benefit [appellee's] defense. It is also important to note that prior to trial counsel did not object to the appointment of Dr. Rotenberg nor did he request the appointment of another or different doctor.

"In addition to demonstrating [appellee's] failure to meet the burden of showing what Dr. Rotenberg's testimony might have been, or that his presence was necessary or essential to the defense, the record also discloses that [appellee] *did* present at his trial the testimony of an expert witness. Although [appellee] did not present any evidence of insanity, he did present two defenses at his trial: (1) voluntary intoxication and (2) diminished capacity; both to establish the lack of a specific intent required for first degree murder and to reduce the crime, if any, to third degree murder. Both of these defenses were presented for the jury's consideration by the trial judge in a charge to which no exception has been taken. The diminished capacity defense was based upon the testimony of Dr. Peter Howard Thomas, called by [appellee]. Dr. Thomas is a clinical psychologist and at the time of trial had an independent practice. Prior to that time, he had some consulting

relationships with the local hospital and school district as well as with the county Children and Youth Services. He had been practicing psychology in Pennsylvania for eight years. Even more importantly, Dr. Thomas had worked with [appellee] off and on for some seven years prior to the trial. Dr. Thomas had personal knowledge of [appellee] and his past experiences with mental health institutions. In fact, Dr. Thomas had seen [appellee] during the two week period prior to the commission of the homicide. Dr. Thomas diagnosed [appellee's] condition as a 'borderline personality.' In response to a hypothetical question from [defense] counsel, the doctor expressed an opinion 'with great certainty' that [appellee] was highly vulnerable to acting out impulsively under stress accompanied by heavy drinking. The acting out would be impulsive, according to the doctor, and would be accompanied by a loss of control. The doctor further expressed the opinion, however, that he could *not* say 'that there was no premeditation.' On cross-examination, Dr. Thomas testified that [appellee], in his opinion, would know the difference between right and wrong at the time of the homicide. Thus, even [appellee's] own expert, who had treated him over a period of years and was familiar with his condition, not only flatly contradicted any suggestion of insanity but he also failed to support his claim of diminished capacity to any great degree.

"As indicated by the majority, there is very little if any question that [appellee] in fact fatally stabbed the victim during a barroom assault. It is also true that the only recourse left to [appellee] was to defend against the charges on grounds of his mental capacity or incapacity. However, although [appellee] filed a notice of an insanity defense, he has not to this day presented one bit of evidence to support that claim. In fact, on the contrary, his own expert has refuted that claim. Additionally, the testimony by the witnesses who were present at the time of the stabbing and those who observed him later, including the officers who effected his arrest, overwhelmingly establishes his sanity on that evening. *See Commonwealth v. Dem-*

*mitt,* 456 Pa. 475, 321 A.2d 627 (1974), and *Commonwealth v. Zlatovich,* 440 Pa. 388, 269 A.2d 469 (1970).

"My review of the record convinces me that the trial judge did not act hastily in denying [appellee's] request, but rather, that he gave it careful and deliberate consideration. Nor in my opinion did he act with undue severity. At the time scheduled for trial, he was presented with a request, after jurors, witnesses, counsel and staff were all collected, to continue the case. Counsel presented him with nothing of substance to support the request. Nor did counsel request a limited continuance or recess during the course of the trial that lasted for a week. Moreover, subsequent events such as the testimony by [appellee's] own expert and the failure to produce, even to this day, any substantiation of a claim of insanity or incapacity to stand trial bear out the fact that the trial court's decision was a sound one reached after an appropriate exercise of the discretion vested in him."

*Commonwealth v. Remp,* 338 Pa.Super. 423, 487 A.2d 1353 (1985) (Rowley, J., dissenting).

Accordingly, we reverse the order of the Superior Court and remand this case to that court for disposition of appellee's remaining issues on appeal.

NIX, C.J., filed a concurring opinion joined by ZAPPALA, J.

HUTCHINSON, J., filed a concurring opinion.

PAPADAKOS, J., concurred in the result.

APPENDIX

PRE-TRIAL COLLOQUY

Notes of Testimony at 4–8

September 14, 1981

MR. MOYER [defense counsel]: [Y]our Honor, I'd like to begin by objecting to this trial since I feel that there is an

outstanding order, dated September 2, signed by you, in regard to an evaluation, psychiatric evaluation of the defendant by Dr. Larry Rotenberg. Further, at this time—

THE COURT: On that point, let's deal with that, first of all. The file would indicate that you, on behalf of your client, on August 11, 1981,—strike that, August 12, 1981, at 2:10 p.m., made application for leave to employ a psychiatrist and/or psychologist.

MR. MOYER: Yes, Your Honor.

THE COURT: In that petition you asked that the Court permit you, on behalf of your client, to retain either a psychiatrist or psychologist to aid you in the preparation for a suppression hearing and trial, particularly to apprise counsel about defendant's ability to understand his rights and to evaluate his intellectual level and determine his understanding of the crimes charged; is that correct?

MR. MOYER: Yes, sir.

THE COURT: The District Attorney then filed an Answer in which it had no objection to that, but I then appointed Dr. Larry Rotenberg of the Reading Hospital.

MR. MOYER: Your Honor,—

THE COURT: Let me finish. I understand that Dr. Rotenberg did an evaluation of your client even before I appointed him.

MR. MOYER: Yes, sir.

THE COURT: All right. And so that I appointed Dr. Rotenberg by order dated September 2, 1981. Is that correct?

MR. MOYER: Yes, sir.

THE COURT: Now, is there any reason why then Dr. Rotenberg has not—is not in a position to assist you, having evaluated your client even prior to his appointment?

MR. MOYER: Your Honor, in regard to the application, the County of Berks was also made a party to that application and it was served upon them. I filed this before Judge Schaeffer and Judge Schaeffer felt that the County should

have some discretion to whether their funds would be spent. There was no answer from them.

THE COURT: Well, they didn't answer by the return date, did they?

MR. MOYER: No, sir.

THE COURT: All right.

MR. MOYER: On August 10, 1981, Your Honor, defendant was seen by Dr. Rotenberg. I had talked to Dr. Rotenberg at that time and I had talked to the defendant and I felt that there were additional, there were some things that bothered me about the defendant, his inability to remember and recall events, that led to my applying for a psychiatric evaluation.

THE COURT: Well, but has Dr. Rotenberg requested additional time to make any reevaluations or anything of that nature?

MR. MOYER: Your Honor, he hasn't requested additional time because I thought he was just—in fact, Your Honor, your order states that the evaluation I received from him was an informal evaluation—no, excuse me. When I talked to you about this order, you stated to me that the evaluation I had was an informal evaluation and you were going to order a formal evaluation by Dr. Rotenberg.

THE COURT: I didn't say that; you misunderstood me, if I did; I don't think I did. What I said is you had him do informally in that he was not appointed by the Court.

MR. MOYER: Yes, sir.

THE COURT: I felt that having filed the petition as you did, that certainly the Court ought to then follow through with that and not have that outstanding, and I therefore, after consultation with you and also Dr. Rotenberg, appointed him. When I talked to Dr. Rotenberg on the telephone, he indicated to me that he had already evaluated your client and he would be happy to accept the appointment. Now, unless he is presently telling me, through you, that he needs additional time for further or reevaluations, I don't

see any merit to your request for a continuance on that basis.

MR. MOYER: Well, Your Honor, I have not talked to Dr. Rotenberg because I have received nothing from him since the evaluation which he did in August.

THE COURT: Well, I appointed him September 2, 1981. It's September 14, 1981 now. Have you called him?

MR. MOYER: No, sir, I wasn't aware that this was a problem until September 11, Your Honor.

THE COURT: All right. Anything further on that point?

MR. MOYER: No, sir.

THE COURT: So you are requesting that the matter be continued because of the possibility that Dr. Rotenberg might want to reevaluate?

MR. MOYER: Yes, sir.

THE COURT: But you are not in a position to know at this time?

MR. MOYER: No, sir, I am not. I would like an opportunity to talk to Dr. Rotenberg and to seek his advice. If there is not a question of competency or criminal responsibility, I would like to find out what sort of medication the defendant was taking, since he was on medication at that time.

THE COURT: All right....

NIX, Chief Justice, concurring.

I agree with the majority that this record does not reflect an abuse of discretion by the trial court in denying the pre-trial motion for a continuance. It is to be noted, however, that the analysis employed to reach this result raises the question of the effectiveness of trial counsel, which will at some point need to be addressed.

ZAPPALA, J., joins in this concurring opinion.

HUTCHINSON, Justice, concurring.

I join the majority opinion and would simply incorporate Judge Rowley's cogent dissent by reference to the report of

the case below. *Commonwealth v. Remp*, 338 Pa.Superior Ct. 423, 436, 487 A.2d 1353, 1360 (1985) (Rowley, J., dissenting).